**XL SPORTS, LTD., Plaintiff–Appellant,**

v.

**Jerry LAWLER, Defendant–Appellee.**

No. 01–5363.

United States Court of Appeals, Sixth Circuit.

Oct. 8, 2002.

Before NELSON, BOGGS, and NORRIS, Circuit Judges.

DAVID A. NELSON, Circuit Judge.

This is an appeal from a final judgment for the defendant in two cases that were consolidated below: one a lawsuit removed to the federal district court from a Tennessee state court, and the other an adversary proceeding initiated in a bankruptcy court and brought to the district court by revocation of an order of reference. In both proceedings the plaintiff, XL Sports, Ltd., sought to recover money allegedly stolen by the defendant, Jerry Lawler, in connection with XL's acquisition of Lawler's professional wrestling business.

In a related case that is not before us, XL sued several individuals (including Lawler) who were said to have defrauded the company. Tried to a jury in the United States District Court for the Northern District of Ohio, that case—to which it will be convenient for us to refer as "the Cleveland case"—resulted in a judgment in favor of XL against its erstwhile business partner, a man named Larry Burton. The

same jury returned a verdict in favor of Jerry Lawler.

The central issue in the present matter is whether XL's claims against Lawler are barred by the doctrine of *res judicata*. The district court answered this question in the affirmative, granting a motion by Lawler for judgment on the pleadings and denying a summary judgment motion filed by XL. On appeal, XL contends that the removal of the case from the Tennessee court was improper and that its claims were not barred by *res judicata* in any event.

We agree with XL that the removal of the state court suit was improper. There is no question as to federal jurisdiction over the adversary proceeding, however, and we shall affirm the grant of summary judgment in that case.

I

The United States Wrestling Association, or USWA, was a trade name used to designate a wrestling entertainment business based in Memphis, Tennessee. The USWA distributed a weekly wrestling television show and promoted periodic live wrestling events.

For 20 years prior to October of 1996, the USWA had been co-owned by the same two men: Jerry Jarrett[1] and the defendant, Jerry Lawler—the latter known to wrestling afficionados as "The King." Jarrett had initially owned a majority interest in the business, but he and Lawler each held a 50% share by 1996.

Jarrett testified that although the USWA had been highly profitable in the 1980s, it was regularly losing money by the mid–1990s. Lawler nonetheless approached Jarrett in the summer of 1996 with an offer to purchase Jarrett's half of the business. Jarrett, who said that he was burned out after spending many years in the world of professional wrestling, was willing to sell. By an agreement dated November 15, 1996, Jarrett undertook to sell his half of the business to Lawler for $250,000.

Despite the USWA's red ink, Lawler entered into an employment contract in October of 1996 with a man known as Larry Burton, promising to pay Burton $750,000 in 52 equal installments. It is unclear precisely what consideration Burton was to render under his employment contract. Furthermore, the parties disagree as to whether Burton was working for Lawler personally or for the USWA. But Lawler does admit that the employment contract contained monetary incentives for Burton if he helped increase the revenue of the business.

At the same time he was sounding out Jarrett about selling, Lawler was working on a deal to sell Burton the entire business. Lawler and Burton signed a letter of agreement in December of 1996 under which Lawler undertook to sell "all or part" of the wrestling business at a price of $500,000 for each 25% share. Burton represented in the letter that he would pay $500,000 for one such share within the next week. The letter gave Burton the option to increase his ownership interest by paying an additional $500,000 for each additional 25% interest he elected to take, as long as the payments were made within specified periods during the succeeding 360 days.

In the meantime, Burton entered into a separate but related agreement with a man named Mark Selker. Selker, according to a letter dated December 13, 1996, promised to contribute $250,000 toward

---

1.  Mr. Jarrett's share of the business was technically owned by a corporation called Warrior Sports, of which Jarrett and his wife were the sole shareholders.

Burton's purchase of the initial 25%. Selker further agreed to bear half the cost if and when the options to purchase the remaining 75% were exercised. In order to carry out his part of this transaction, Selker formed a limited liability company, XL Sports, Ltd., the plaintiff in the matter now before us.

In December of 1996 Lawler honored his agreement to purchase Jarrett's half of the wrestling business by paying $187,500 to Jarrett and $62,500 to Burton. (The latter payment was described as a commission for Burton's work in helping to arrange the sale.) At about the same time, Lawler received $250,000 from XL in partial payment for the first 25% increment.

By June 6, 1997, according to a letter of that date, Burton and Selker had paid Lawler a total of $1,100,000; they proposed to pay $900,000 more within a week, thereby acquiring 100% of the business. Lawler agreed to the terms set forth in the June 6 letter, and on June 20, 1997, he executed a notarized bill of sale transferring all of the USWA's assets to XL.

On November 21, 1997, XL filed a voluntary petition for bankruptcy in the United States Bankruptcy Court for the Western District of Tennessee. A few days later, acting as debtor-in-possession, the company instituted an adversary proceeding against Lawler in the bankruptcy court. The stated object of this proceeding was to avoid, under the provisions of 11 U.S.C. § 548(a), what XL claimed to have been a fraudulent transfer of the USWA business.

In addition, XL sued Lawler, Burton and several other individuals in the United States District Court for the Western District of Tennessee. The complaint, which sought damages and equitable relief under the Racketeer Influenced and Corrupt Organizations Act, charged the defendants not only with racketeering, but with common law conversion, fraud, and conspiracy to injure XL's business. Burton filed his own complaint against Mark Selker, the latter's father Eugene Selker, and the Selkers' law firm, alleging legal malpractice, interference with business relationships, and fraud. Lawler, for his part, instituted an action seeking damages from Burton, the Selkers, the Selkers' law firm, and that firm's other name partner. Numerous cross-claims and counter-claims followed. All three of these cases were eventually consolidated and transferred to the United States District Court for the Northern District of Ohio in Cleveland, where they went to trial before a jury.

The Cleveland jury reached a verdict, on which judgment was entered, finding that Burton and his son, Jayson Bertman, had engaged in racketeering. Damages totaling $865,000 were assessed against them. (The judgment was later amended to reflect that Burton and Bertman were jointly and severally liable for this amount, and that XL was entitled to treble damages, or $2,595,000, under 18 U.S.C. § 1964(c).) The jury also found Burton liable for conversion and fraud, with respect to which $235,000 was awarded in compensatory damages and $3,300,000 in punitive damages. Finally, the jury found in favor of Lawler as to all of XL's claims against him. In this connection the jury explicitly found that XL had failed to prove that Lawler had wrongfully exercised dominion over XL's property in denial of XL's rights to that property. The court directed a $1,000,000 verdict for Lawler in his suit against Burton, an amount Burton had previously admitted to owing.[2]

---

**2.** Burton, his son Jayson Bertman, and XL appealed the judgments against them to this court. The appeals were unsuccessful. See

*Burton v. Selker,* 30 Fed.Appx. 456, 2002 WL 252454 (6th Cir.2002).

Two weeks after the entry of judgment in the Cleveland case, XL moved for summary judgment in its adversary proceeding against Lawler. XL asserted that the recent trial had resolved all factual issues in its favor and that, under 11 U.S.C. § 544(b) and the common law of Tennessee, Lawler was bound to deliver $1,100,000 to the bankruptcy estate. Lawler countered with a motion for judgment on the pleadings in which he asserted that the claims advanced in XL's adversary proceeding were barred by the judgment in the Cleveland case. The bankruptcy court denied both motions.

Apparently in response to statements made by the bankruptcy judge at a conference held in chambers, XL then sued Lawler in Tennessee Chancery Court. The complaint asked that a constructive trust be imposed on the money XL had paid Lawler in connection with its purchase of the USWA's assets. Lawler removed the chancery court suit to the United States District Court for the Western District of Tennessee, and XL moved for a remand. The district court denied the remand and, at Lawler's request, withdrew the reference of XL's adversary proceeding to the bankruptcy court. The adversary proceeding and the removed Tennessee suit were then consolidated, after which the district court entered judgment in favor of Lawler on *res judicata* grounds. This appeal followed.

## II

XL's initial argument on appeal is that the case it filed in the Tennessee Chancery Court was not removable. In concluding otherwise, the district court reasoned thus:

"[T]he likelihood that Lawler will rely on either claim preclusion or issue preclusion to defend against XL Sports' constructive trust allegations suffices to present a substantial federal component

into [sic] XL Sports' state court cause of action. Accordingly, the removal of this case from state court to federal court was proper, and XL Sports' motion to remand this case to state court is denied."

As authority for the proposition that removal is permitted when a state claim is potentially barred by a prior federal court judgment, the district court relied on *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), and *Her Majesty the Queen in Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 342 (6th Cir.1989).

In *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998), the Supreme Court addressed the question whether, under footnote 2 of *Moitie*, removal could properly be based on the defendant's assertion of a defense based on a prior federal judgment. The Court's answer, as XL points out, was that "claim preclusion by reason of a prior federal judgment is a defensive plea that provides no basis for removal under [28 U.S.C.] § 1441(b)." *Id.* at 478. *Rivet* thus unequivocally forecloses any argument that footnote 2 of the *Moitie* opinion authorizes removal of XL's state law claim.

Unable to rely on the district court's explicit reasoning, Lawler contends on appeal that XL's Tennessee suit was nonetheless removable pursuant to 28 U.S.C. §§ 1441 and 1452(a). We shall address these statutory provisions in turn.

### A

Section 1441(a) of Title 28 permits removal of any state court civil action of which a federal district court would have original jurisdiction. Because Lawler is a citizen of Tennessee, he could not remove

the instant action on the basis of diversity of citizenship. See 28 U.S.C. § 1441(b). Since no other basis for original federal jurisdiction is evident in this case, removal under § 1441 is authorized only if the plaintiff's well-pleaded complaint presents a federal question. See *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). At the same time, "a plaintiff may not defeat removal by omitting to plead necessary federal questions." *Rivet,* 522 U.S. at 475 (quoting *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 22, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)). Our rule, therefore, has been that a state court complaint ostensibly presenting only state law claims is not removable, absent diversity, unless "some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims or if the plaintiff's claim is really one of federal law . . . ." *Her Majesty the Queen,* 874 F.2d at 339 (internal quotation marks omitted). The party seeking removal must prove that jurisdiction exists. *Id.*

On its face, the complaint filed by XL in the Tennessee Chancery Court asserts state claims only. Lawler suggests, however, that the complaint is essentially a motion to alter or amend judgment under Federal Rule of Civil Procedure 59. Citing the Fifth Circuit case of *Villarreal v. Brown Express, Inc.,* 529 F.2d 1219 (5th Cir.1976), Lawler argues that such a motion constitutes a removable federal law claim.

We need not decide whether to follow *Villarreal,* for even under *Villarreal* we should be hard pressed to conclude that a lawsuit resting solely on state law, filed in a Tennessee state court, and removed to the United States District Court for the Western District of Tennessee approximately 11 months after the entry of judgment in a federal court in the Northern District of Ohio, somehow constitutes a motion to alter or amend the Northern Ohio judgment.[3] Although XL's Tennessee complaint makes reference to the Northern District of Ohio judgment, moreover, it does not seek to change the judgment. Indeed, XL seems to believe that the judgment bolsters its case for imposing a constructive trust on the allegedly stolen funds. Be that as it may, it is clear to us that XL's Tennessee suit is not removable as a motion made under Rule 59.

Alternatively, Lawler points to our decision in *Striff v. Mason,* 849 F.2d 240 (6th Cir.1988), as support for his contention that XL's state law claim was removable. *Striff* permitted removal of a state injunction suit where the relief sought would have interfered with the operation of a federal consent decree. *Id.* at 244. Lawler asserts that XL's Tennessee action is a similarly removable attempt to launch a collateral attack on the judgment entered in the Cleveland case.

Caselaw subsequent to *Striff* makes it clear that although the claim in that case appeared to be predicated on state law, the law that Striff sought to invoke was in fact "the product of the federal consent decree." *Her Majesty the Queen,* 874 F.2d at 339 (citing *Striff,* 849 F.2d at 244). At best, then, *Striff* represents a narrow exception to our general rule that "[a]bsent complete pre-emption, the plaintiffs in a nondiversity action are masters of their complaint and may avoid federal subject-matter jurisdiction by relying exclusively

---

3. In *Villarreal,* the removed complaint was filed in a state court in the same federal district just seven days after the district court entered a judgment adverse to the plaintiff. 529 F.2d at 1220.

on state law."[4]  *Ahearn v. Charter Township of Bloomfield,* 100 F.3d 451, 456 (6th Cir.1996).

██  The case at bar involves neither complete preemption nor an ongoing federal consent decree.  Although it is true that XL's Tennessee complaint alleges that the prior federal suit established some of the facts relevant to the company's constructive trust claim, the complaint invokes only the common law of Tennessee as a basis for relief.  We do not believe this case is comparable to *Striff,* where the plaintiff's "action was inseparable from years of federal litigation .…" *Her Majesty the Queen,* 874 F.2d at 339.  XL's Tennessee case was not removable under 28 U.S.C. § 1441.

### B

Lawler argues in the alternative that 28 U.S.C. § 1452(a) allowed the district court to entertain XL's state law claims even in the absence of federal question jurisdiction.  Section 1452(a) permits removal of any cause where jurisdiction depends on 28 U.S.C. § 1334—the section of the code that grants bankruptcy jurisdiction to the federal district courts.  XL, however, points to 28 U.S.C. § 1334(c)(2), which provides as follows:

"Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction."

Because the district court found jurisdiction proper under § 1331, it did not have occasion to decide the question raised by § 1334(c)(2).

The record shows that XL satisfied the initial precondition of § 1334(c)(2) by timely requesting that the district court abstain.  The parties disagree, however, as to whether XL's state law claim arises under Title 11 (or in a case under Title 11)—in which event § 1334(c)(2) does not require abstention—or is merely related to a Title 11 case.

Section 1334(c)(2) requires district courts to abstain from hearing state law claims that are merely "related to a case under title 11."  We have previously read this mandatory abstention requirement as limited to "non-core" proceedings. See *In re Dow Corning Corp.,* 113 F.3d 565, 570 (6th Cir.1997).[5]  Our reading comports with 28 U.S.C. § 157, which gives bankruptcy judges authority to enter judgments in "all core proceedings arising un-

---

**4.** Some circuits have held that a state law claim can be removed only if federal law completely preempts all state causes of action, as in the case of the Labor Management Relations Act or the Employee Retirement Income Security Act. See, *e.g., Goepel v. National Postal Mail Handlers Union,* 36 F.3d 306, 311–12 (3d Cir.1994); *M. Nahas & Co., Inc. v. First Nat'l Bank of Hot Springs,* 930 F.2d 608, 612 (8th Cir.1991); see also 16 Moore's Federal Practice § 107.14[3][b][iv] (3d ed. 2000).  We have similarly stated that "[t]he only exception to the well-pleaded com-

plaint rule is the doctrine of complete preemption." *Robinson v. Michigan Consolidated Gas Co., Inc.,* 918 F.2d 579, 585 (6th Cir.1990).  *Striff* is obviously in some tension with such statements.

**5.** Other circuits have adopted the same interpretation of the "related to a case under title 11" language.  See *Matter of Rupp & Bowman Co.,* 109 F.3d 237, 239 (5th Cir.1997); *Matter of U.S. Brass Corp.,* 110 F.3d 1261, 1268 (7th Cir.1997); *In re S.G. Phillips Constructors, Inc.,* 45 F.3d 702, 708 (2d Cir.1995).

der title 11, or arising in a case under title 11," but only allows them to make proposed findings in "a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." 28 U.S.C. § 157(b)(1), (c)(1). The language of § 157(b)(1), as we have noted before, "apparently equates core proceedings with the categories of 'arising under' and 'arising in' proceedings." *In re Wolverine Radio Co.*, 930 F.2d 1132, 1144 (6th Cir.1991). Section 157(c)(1) correspondingly implies that "a proceeding ... related to a case under title 11" is non-core. The wording of § 157 obviously parallels the phrases used in § 1334(c)(2) and reinforces the conclusion that mandatory abstention applies only to non-core proceedings.

Given that the abstention requirement of § 1334(c)(2) applies only to non-core proceedings, Lawler asserts that XL's suit is in fact a core proceeding. Such a proceeding—one that "aris[es] under title 11 or aris[es] in a case under title 11"—must involve a claim that is directly created by bankruptcy law or that by nature could not exist outside the bankruptcy context. *Sanders Confectionery Prods., Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 483 (6th Cir.1992) (citing *In re Wolverine Radio Co.*, 930 F.2d at 1144); see also *Browning v. Levy*, 283 F.3d 761, 773 (6th Cir.2002) (same). Section 157(b)(2) of Title 28 helpfully provides a non-exclusive list of core bankruptcy proceedings.

■ The relief sought by XL in its adversary proceeding is similar to that sought in its Tennessee suit—*i.e.,* the recovery of $1,100,000. That alone, however, is not enough to transform the company's state law claim into a core proceeding. XL's Tennessee suit arises under the common law of Tennessee, not under federal bankruptcy law. Moreover, XL could have made the same claim before it filed for bankruptcy, just as it could have made the same claim if it had never gone bankrupt. And we note that a suit attempting to impose a constructive trust on allegedly stolen money is not among the core proceedings listed in § 157(b)(2). Because the outcome of XL's state law suit could have an effect on the bankruptcy estate, the suit does qualify as a proceeding "related to a case under title 11." See *Browning,* 283 F.3d at 773. But that does not make it a core proceeding exempt from the abstention requirement of § 1334(c)(2).

The only remaining consideration under § 1334(c)(2) is whether the Tennessee suit is one that was "commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction."[6] XL's suit having been filed originally in the Tennessee Chancery Court, it is clear that an action was "commenced" in state court. Nothing in the record indicates that the Tennessee courts would not adjudicate the claim in a timely fashion or that the chancery court lacks jurisdiction. All of the statutory requirements of § 1334(c)(2) have thus been met in this case, and the district court should have abstained from hearing XL's state law claim. Because removal under § 1441 was improper, the suit must be remanded to the Tennessee Chancery Court.

### III

The second claim involved in this appeal was raised, as we have explained, in an adversary proceeding filed in the bankruptcy court. The adversary proceeding was stayed pending completion of the jury trial in the Cleveland case, after which the district court withdrew the reference to the bankruptcy court and consolidated the

---

**6.** "The abstention provisions of 28 U.S.C. § 1334(c)(2) apply even though a case has been removed pursuant to 28 U.S.C. § 1452." *Robinson,* 918 F.2d at 584 n. 3.

adversary proceeding with the suit removed from the Tennessee Chancery Court.

XL's original complaint in the adversary proceeding relied upon 11 U.S.C. § 548(a) and "the strict voidability rule of Tennessee common law" as grounds for avoiding the transfer of over $1 million to Lawler. Section 548(a) permits a bankruptcy trustee to avoid transfers made "with actual intent to . . . defraud any entity to which the debtor was or became . . . indebted," or, under certain circumstances, to avoid transfers in exchange for which the debtor "received less than a reasonably equivalent value . . . ."

After the Cleveland case was resolved, XL moved for summary judgment in the adversary proceeding on the basis of §§ 543, 544(b) and 550 of Title 11, as well as "the common law of Tennessee." (XL made no mention of § 548(a) at this stage.) Section 544(b) allows the trustee to "avoid any transfer . . . that is voidable under applicable law by a creditor holding an unsecured claim . . . ." Section 550 permits recovery of avoided transfers from transferees, and § 543 requires custodians of the debtor's property to turn that property over to the trustee.

■ The mandatory abstention provision in § 1334(c)(2) does not apply to XL's adversary proceeding. Section 157(b)(2)(H) of Title 28 specifically provides that "proceedings to . . . avoid . . . fraudulent conveyances" are core proceedings. This includes not only avoidance proceedings under § 548(a), but those under § 544(b) as well. See *In re Mankin,* 823 F.2d 1296, 1299–1301 (9th Cir.1987); 1 Collier on Bankruptcy ¶ 3.02[3][b] (15th ed. rev. 1996). And although the substantive law applied in the § 544(b) proceeding would be state law, the claim still arises under title 11 because it is the bankruptcy code that transfers the cause of action from the creditor to the trustee. See *Mankin,* 823 F.2d at 1308; 5 Collier on Bankruptcy ¶ 544.09[2]. Section 157(b)(3) tells us also that "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." XL's adversary proceeding is thus a core proceeding regardless of whether it is brought under § 548(a) or § 544(b), and § 1334(c)(2) did not require the district court to abstain from hearing the dispute.

Assuming that the adversary proceeding was properly before the district court, XL argues that the bankruptcy court's denial of Lawler's motion for judgment on the pleadings represents the law of the case. In subsequently entering judgment for Lawler, XL maintains, the district court erroneously departed from the law of the case. XL further maintains that the district court circumvented the timing requirement of Bankruptcy Rule 8002 when it reconsidered the bankruptcy judge's denial of Lawler's motion.[7]

■ We agree that the bankruptcy court's order represented the law of the case. But the law of the case doctrine, when applied to the decisions of a coordinate court, is best described as "a discretionary tool" that is used "to promote judicial efficiency." *United States v. Todd,* 920 F.2d 399, 403 (6th Cir.1990). Here the district court concluded that the bankruptcy court had failed fully to consider the question of claim preclusion, and further concluded that in light of this failure it was proper to revisit the issue in response to a subsequent motion for judgment. The dis-

---

7. Bankruptcy Rule 8002(a) states, in relevant part, that a "notice of appeal shall be filed with the clerk within 10 days of the date of the entry of the judgment, order, or decree appealed from."

trict court was well within its discretion in taking this tack.

As for Rule 8002(a) of the Federal Rules of Bankruptcy Procedure, it creates a 10–day period within which parties must file a notice of appeal from an adverse judgment. Such an appeal is only appropriate when the bankruptcy court enters a final judgment, order or decree; an interlocutory order or decree under 11 U.S.C. § 1121(d); or an order as to which the district court has granted leave to appeal. 28 U.S.C. § 158(a); Fed. R. Bankr.P. 8001. In this case the bankruptcy court's order denying Lawler's motion for judgment on the pleadings was not appealable on any of the grounds listed in § 158(a). Consequently, there could be no violation of the time limits of Rule 8002.

All of which brings us, at last, to the district court's holding that the claims advanced in XL's adversary proceeding are barred under the doctrine of *res judicata*. Relying mainly on an unpublished Tennessee Chancery Court case, *Gindt v. Beaty*, No. 101372–3 (January 26, 1993), XL argues that neither of its claims is precluded because both are directed against the supposedly stolen money *in rem* and not against Lawler *in personam*. In addition, XL asserts that the judgment entered in the Cleveland case precludes Lawler from challenging its claim that the money transferred to his bank accounts was obtained by fraud.

As we have seen, XL appears to have abandoned its claim under 11 U.S.C. § 548 in favor of one under 11 U.S.C. § 544(b). XL's brief on appeal does quote some factual allegations from the original complaint in the adversary proceeding, and it asserts generally that "the same principles control" in the Tennessee suit and the adversary proceeding, but the brief conspicuously omits any mention of the elements of a § 548 claim, as does the underlying motion. We take it, then, that XL is proceeding only under § 544(b), which allows avoidance of transfers "voidable under applicable law by a creditor holding an unsecured claim . . . ."[8]

The doctrine of *res judicata*, or "claim preclusion," as one branch of the doctrine has come to be called in academic circles, prohibits parties or their privies from relitigating claims that were or could have been decided in a previous action between the same parties, where the previous action has ended in a final judgment on the merits. *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir.1995). XL and Lawler were both parties to a lawsuit based on the facts at issue here, which lawsuit ended with a final judgment reflecting a finding by the jury that Lawler had not wrongfully exercised dominion over XL's property in denial of XL's rights. In the present case, however, XL acts as a debtor in possession, seeking to exercise the right of a trustee to avoid a fraudulent transfer. See 11 U.S.C. § 1107(a). A trustee in bankruptcy "represents the interest of all creditors of the Debtor's bankruptcy estate," and is therefore not generally considered to be in privity with the debtor. See *In re Fordu*, 201 F.3d 693, 705–06 (6th Cir.1999). A debtor in possession may likewise act as a repre-

---

8. It is quite likely that XL would be judicially estopped from asserting under § 548(a) that it did not receive a reasonably equivalent value. In a final pretrial order entered in the Cleveland case, XL took the position that it was not overcharged for the wrestling business, a position it acknowledged was different from the requirements of § 548(a). See *Reynolds v.* *Commissioner*, 861 F.2d 469, 472 (6th Cir. 1988) (noting that the doctrine of judicial estoppel "prevent[s] a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding"). But because XL has abandoned its § 548(a) claim, we need not reach the question of estoppel.

sentative of the bankruptcy creditors. See *Ford Motor Credit Co. v. Weaver,* 680 F.2d 451, 462 n. 8 (6th Cir.1982).

Under XL's theory of this case, Lawler is a constructive trustee for funds that were stolen from XL, the constructive beneficiary. XL argues that under *Gindt* and the Tennessee cases cited therein, such a beneficiary retains title to those funds held in trust that can be traced. See, *e.g., State ex rel. Robertson v. Thomas W. Wrenne & Co.,* 170 Tenn. 131, 92 S.W.2d 416, 417 (1936) (holding that when a trustee bank commingles its own funds with the beneficiary's, the trustee is presumed to withdraw its own funds first). The company makes no mention of any creditor who would be able to assert this Tennessee law claim that ultimately underlies its § 544(b) action.[9]

As *Gindt* framed it, the key question for a claimant like XL is whether, "where the [stolen] property can be traced, the *rightful owner* is entitled to recover that which belongs to him." (Emphasis added.) As is not true under the state fraudulent transfer statutes that are usually the subject of § 544(b) cases,[10] *Gindt* confers no independent cause of action on creditors. Tennessee's Fraudulent Conveyance Act, in contrast, specifically provides that a creditor may "[h]ave the [fraudulent] conveyance set aside or obligation annulled to the extent necessary to satisfy the creditor's claim." Tenn.Code Ann. § 66–3–310(1). It appears that XL, as the debtor

in possession, can only assert a § 544(b) *Gindt* claim insofar as it steps into the shoes of the "rightful owner." Here the alleged "rightful owner" is XL itself.

■ If XL is in fact the rightful owner of the $1.1 million it transferred to Lawler, the issue before us is whether XL's *Gindt* claim under § 544(b) is barred by the doctrine of *res judicata.* In the prior Cleveland case, XL asserted several common law causes of action against Lawler, including fraud and conversion, but did not mention its claim under *Gindt.* The jury exonerated Lawler. The entry of judgment on the jury's verdict precludes XL from now going after Lawler on the theory underlying the adversary proceeding, that theory being one that could have been asserted in a prior suit between the same parties in which there is now a final judgment on the merits. In light of the fact that the *Gindt* claim could only be asserted by XL itself, and not by its creditors, the doctrine of *res judicata* precludes the company from asserting its claim as a debtor in possession. *Cf. In re Marlar,* 267 F.3d 749, 756 (8th Cir.2001) (finding that a creditor who already sued under a state fraudulent transfer act could not benefit from a subsequent suit by a trustee under § 544(b), even though other creditors might); *In re Hansler,* 988 F.2d 35, 37–38 (5th Cir.1993) (finding that a prior state court judgment precluded a contrary judgment in a non-core bankruptcy proceeding).

---

**9.** We need not address the issue here, but § 544(b) seemingly requires the trustee (or debtor in possession) to at least allege the existence of an unsecured creditor who could avoid the transfer under state law. See *In re Wintz Cos.,* 230 B.R. 848, 859 (8th Cir.BAP 1999); *Sender v. Simon,* 84 F.3d 1299, 1304 (10th Cir.1996). We shall assume for purposes of analysis that it is possible for XL to assert its *Gindt* claim under § 544(b), even though the plain language of that statute re-

quires the transfer to be voidable "by a creditor holding an unsecured claim . . . ." See 5 Collier on Bankruptcy ¶ 544.09[1] ("If there are no creditors against whom the transfer is voidable under the applicable law, the trustee is powerless to act under § 544(b)").

**10.** See 3 Norton Bankruptcy Law and Practice 2d § 54:6 (2d ed. 1997), which discusses the various state statutes that are invoked under § 544(b).

24

The judgment entered in the removed case is **VACATED**, and the district court is instructed to **REMAND** that case to the Chancery Court. The summary judgment entered in the adversary proceeding is **AFFIRMED**.